UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KELLY JORDAN AND ROBERT JORDAN, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:11CV2123 JCH |
| ) | |
| SAFECO INSURANCE CO. OF ILLINOIS, ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 17) and Plaintiffs' Motion for Partial Summary Judgment (ECF No. 20), both filed on May 17, 2012. These motions are fully briefed and ready for disposition.

**BACKGROUND**[1]

On November 1, 2009, Plaintiff Kelly Jordan was walking as a pedestrian at the intersection of Elm Street and Glendale Road in St. Louis County, Missouri. (Joint Stipulation of Facts ("Joint Stipulation"), ECF No. 19, ¶ 6). While crossing the intersection, Plaintiff Kelly Jordan was struck by a motor vehicle driven by Joseph Simokaitis. (Id., ¶ 7). As a result of this accident, Plaintiff Kelly Jordan sustained injuries and lost wages. (Id., ¶ 8). Simokaitis was insured for liability in the amount of $100,000.00 by American Family Insurance, and the $100,000.00 liability limits of Simokaitis's insurance policy have been exhausted by payment to Plaintiffs Kelly and Robert Jordan. (Id., ¶¶ 9, 10).

---

[1]The parties have filed a Joint Stipulation of Facts in support of their respective motions for summary judgment.

Plaintiffs were the named insureds on three policies issued by Defendant Safeco Insurance Company of Illinois ("Defendant" or "Safeco"): Z3304510, Z3304500, and Z3304574.  (Id., ¶ 2). All three policies were in effect at the time of the accident, and each policy provided $100,000.00 in underinsured motorist ("UIM") coverage.  (Id., ¶¶ 3, 4, 5).  Policy Z3304510 listed a 2003 BMW 325CI as the covered auto, Policy Z3304500 listed a 1998 Ford Expedition and a 1992 Mercedes 190E 2.6 as the covered autos, and Policy Z3304574 listed a 1997 BMW Z3 2.8 and a 2000 BMW 740IL as the covered autos.  (Id.).

On March 28, 2011, Defendant made a $100,000.00 UIM payment to Plaintiffs and advised Plaintiffs that this was all the coverage available under their policies with Defendant.  (Id., ¶ 11). Plaintiffs claim that they are entitled to stack all three policies and all five UIM coverages, and that they should therefore receive a total of $500,000.00 in UIM coverage.  (Id., ¶ 13).

Each of Plaintiffs' policies with Defendant contains the following language:

**PART F - GENERAL PROVISIONS**

**TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES**

If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto. In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any **insured**.

1.      This provision does not apply to Uninsured Motorist Coverage.

...

**ADDITIONAL COVERAGES**

**UNDERINSURED MOTORISTS COVERAGE**

**LIMIT OF LIABILITY**

    A.    The limit of liability shown in the Declarations for "each person" for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident.

Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involves in the accident.

If more than one vehicle is insured under this policy, or if more than one policy issued to the insured applies to the same accident, the limits applicable to Underinsured Motorists Coverage may not be stacked.

...

**OTHER INSURANCE**

If there is other applicable underinsured motorist insurance available under one or more policies or provisions of coverage:

    1.    Any recovery for damages under all such policies or provisions of underinsured motorist coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing underinsured motorist coverage on either a primary or excess basis.

    2.    Any underinsured motorist insurance we provide with respect to a vehicle you do not own shall be excess over any collectible underinsured motorist insurance.

    3.    If the underinsured motorist coverage under this policy is provided:

        a.    On a primary basis, we will pay only our share of the loss that must be paid under insurance providing underinsured motorist coverage on a primary basis. Our share is the proportion that our underinsured motorist limit of liability bears to the total of all applicable underinsured motorist limits of liability for coverage provided on a primary basis.

        b.        On an excess basis, we will pay only our share of the loss that must be paid under underinsured motorists insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability for underinsured motorists coverage bears to the total of all applicable limits of liability for underinsured motorist coverage provided on an excess basis.

(Id., ¶¶ 14, 15, 16; see also Insurance Policies, ECF Nos. 19-1, 19-2, and 19-3). Additionally, the Declarations Page for each of Plaintiffs' policies stated that each policy provided $100,000.00 per person in UIM coverage for bodily injury. (Insurance Policies, ECF No. 19-1, p. 9; ECF No. 19-2, p. 11; ECF No. 19-3, p. 9).

Plaintiffs filed this action in the Circuit Court of St. Louis County, State of Missouri. Defendant removed this action to this Court on December 7, 2011, on the basis of diversity jurisdiction. Plaintiffs' Complaint contains three counts: Count I requests a declaratory judgment that the UIM coverages under Plaintiffs' policies with Defendant may be stacked, Count II asserts Plaintiffs are entitled to an additional $400,000.00 in UIM coverage, and Count III asserts Plaintiffs are entitled to an additional amount as a penalty under MO. REV. STAT. § 375.420 since Defendant's refusal to pay Plaintiffs an additional $400,000.00 in UIM benefits was without reasonable cause or excuse.

## **STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

When faced with cross-motions for summary judgment, the court is not required to grant judgment as a matter of law for one side or the other. Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id.

## DISCUSSION

At issue in the parties' cross-motions for summary judgment is whether Plaintiffs' UIM coverages can be stacked. All parties assume that Missouri substantive law controls this diversity case. Under Missouri law, "stacking" refers to an insured's ability to obtain multiple insurance coverage benefits for an injury, either from multiple policies pertaining to multiple vehicles or from coverages for multiple vehicles in one policy. Ritchie v. Allied Property & Cas. Ins. Co., 307 S.W.3d

132, 135 (Mo. 2009). UIM coverage is optional coverage purchased by an individual through his own insurance company "to pay for losses incurred because another negligent driver's insurance is insufficient to cover his or her actual loss." Geneser v. State Farm Mut. Auto. Ins. Co., 787 S.W.2d 288, 289 (Mo. Ct. App. 1989).

There is no statute in Missouri that requires drivers to purchase UIM coverage. Lynch v. Shelter Mut. Ins. Co., 325 S.W.3d 531, 539 (Mo. Ct. App. 2010). Accordingly, the limits of underinsured motorist coverage are determined by the insurance contract. Id. A contract's terms are enforced as written as long as the language of the contract is unambiguous. Id. When "construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." Ritchie, 307 S.W.3d at 135. If the policy language is unambiguous and does not allow stacking, there can be no court interpretation mandating stacking for this optional coverage. Harris v. Shelter Mut. Ins. Co., 141 S.W.3d 56, 61 (Mo. Ct. App. 2004). If the policy language is ambiguous, courts should construe the policy in favor of the insured and for stacking. Ritchie, 307 S.W.3d at 135.

The crux of Plaintiffs' argument is that the phrase "a vehicle you do not own" in subsection 2 of the Other Insurance provision of the policies' Underinsured Motorist Coverage is ambiguous in conjunction with the language in the policies' Limit of Liability section when applied to Simokaitis's vehicle. Plaintiffs claim this ambiguity exists since Plaintiff Kelly Jordan was injured by "a vehicle [she does] not own." Plaintiffs asserts this ambiguity results in the invalidation of the Limit of Liability section and enables Plaintiffs to stack their UIM coverages. See Ritchie, 307 S.W.3d at 138.

Defendant counters that the policies unambiguously prohibit the stacking of UIM coverages, as subsection 2 of the Other Insurance provision is inapplicable since Plaintiff Kelly Jordan was not driving or riding in "a vehicle [she does] not own" at the time of the accident. Thus, Defendant asserts the Limit of Liability section barring the stacking of UIM benefits limits Plaintiffs' recovery to $100,000.00.

The parties devote a substantial amount of their arguments to a discussion of the Missouri Supreme Court's decision in Ritchie. In Ritchie, 307 S.W.3d at 138, the court held that the Other Insurance section of UIM coverage was ambiguous as to whether UIM coverage was stackable, and that the ambiguity would be resolved in favor of the insureds. The decedent in Ritchie, who was covered by three separate UIM policies, died in an accident while riding in a vehicle she did not own. Id. at 137. The insurer claimed the decedent's family was only entitled to recover from a single policy due to anti-stacking provisions in the Limit of Liability clause. Id. at 134. The court found the Limit of Liability provision was ambiguous in light of language in the Other Insurance clause, which stated that "[a]ny coverage we provide with respect to a vehicle you do not own shall be excess over any collectible underinsured motorist coverage." Id. at 137. Specifically, the court found that the "excess" provision suggests "that the policy's anti-stacking provisions, which might normally and otherwise apply, do not apply in the special situation where the insured is injured while occupying a non-owned vehicle." Id. at 137–38 (internal quotation marks and citations omitted).

Similarly, other Missouri cases have held that an Other Insurance provision is ambiguous when read in conjunction with the Limit of Liability clause where an insured is involved in an accident while driving or riding in a non-owned vehicle. See, e.g., Durbin v. Deitrick, 323 S.W.3d 122, 127 (Mo. Ct. App. 2010) ("...[T]he language of the second sentence of the Other Insurance provision...could reasonably be understood by a lay person to indicate an exception to this general

prohibition in the specific case where liability coverage is afforded for injuries incurred through use of a vehicle not owned by a covered individual."); Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 132 (Mo. 2007); Am. Family Mut. Ins. Co. v. Ragsdale, 213 S.W.3d 51, 56-57 (Mo. Ct. App. 2006); Niswonger v. Farm Bureau Town and Country Ins. Co., 992 S.W.2d 308, 315 (Mo. Ct. App. 1999); see also Barron v. Shelter Mut. Ins. Co., 230 S.W.3d 649, 653 (Mo. Ct. App. 2007) (juxtaposition of "other insurance" provision and anti-stacking provision in boat owners' liability policy created ambiguity when insured was using "non-owned property").

Here, the Court finds subsection 2 of the Other Insurance provision is inapplicable to Plaintiffs' claim, and thus there is no ambiguity resulting from the reading of subsection 2 with the Limit of Liability section. See Wise v. Am. Standard Ins. Co., No. 4:10CV668, 2011 WL 3880580, at *5 (E.D. Mo. Sept. 2, 2011), aff'd, 678 F.3d 944 (8th Cir. 2012). Plaintiffs have pointed to no Missouri cases applying subsection 2 of the Other Insurance provision to situations where an insured is not in a non-owned vehicle at the time of the accident, and the Court has been unable to locate any such case. The Court does not believe the Missouri Supreme Court intended its decision in Ritchie to be read so expansively. Thus, Missouri law dictates that the language in subsection 2 concerning a non-owned vehicle is limited to "the special situation where the insured is injured while occupying a non-owned vehicle," Ritchie, 307 S.W.3d at 137-38, and does not apply to every accident involving a vehicle not owned by the insured. Accordingly, the Ritchie line of cases is inapplicable to Plaintiffs' claims.

Furthermore, Plaintiffs' interpretation of subsection 2 would automatically render every claim for UIM benefits subject to stacking under Missouri law. As noted above, UIM coverage is purchased by an insured "to pay for losses incurred because another negligent driver's insurance is insufficient to cover his or her actual loss." Geneser, 787 S.W.2d at 289. Thus, an accident

- 8 -

triggering the awarding of UIM benefits necessarily involves a non-owned vehicle driven by another driver.

Since subsection 2 of the Other Insurance provision does not apply to Plaintiffs' claims, the Court finds Plaintiffs' policies unambiguously prohibit the stacking of UIM coverages. Under Part F - General Provisions, the policies specifically provide that "[i]n no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any **insured**." (Insurance Policies, ECF No. 19-1, p. 31; ECF No. 19-2, p. 35; ECF No. 19-3, p. 33). Additionally, under the Limit of Liability section of the Underinsured Motorist Coverage, the policies also provide that "[i]f more than one vehicle is insured under this policy, or if more than one policy issued to the insured applies to the same accident, the limits applicable to Underinsured Motorists Coverage may not be stacked." (Insurance Policies, ECF No. 19-1, p. 33; ECF No. 19-2, p. 37; ECF No. 19-3, p. 35). An "ordinary person of average understanding" would understand this language to mean that the UIM coverages available under Plaintiffs' policies may not be stacked. See Ritchie, 307 S.W.3d at 135.

Additional language in the Limit of Liability and Other Insurance sections of the Underinsured Motorist Coverage also prohibits the stacking of Plaintiffs' UIM coverages. The first sentence in the Limit of Liability section notes that "[t]he limit of liability shown in the Declarations for 'each person' for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident." (Insurance Policies, ECF No. 19-1, p. 33; ECF No. 19-2, p. 37; ECF No. 19-3, p. 35). The first sentence in the Other Insurance section notes as follows:

> If there is other applicable underinsured motorist insurance available under one or more policies or provisions of coverage:

>    1. Any recovery for damages under all such policies or provisions of underinsured motorist coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing underinsured motorist coverage on either a primary or excess basis.

(Insurance Policies, ECF No. 19-1, pp. 33-34; ECF No. 19-2, pp. 37-38; ECF No. 19-3, pp. 35-36). This language in these two provisions is nearly identical to the language in Ritchie, which the court in Ritchie acknowledged "could be interpreted to prohibit stacking" but which was rendered ambiguous only by the non-owned vehicle subsection of the Other Insurance provision. See Ritchie, 307 S.W.3d at 136-38.

Since Plaintiffs' policies unambiguously prohibit the stacking of UIM coverages, Plaintiffs are not entitled to stack their UIM coverages. Thus, Defendant's Motion for Summary Judgment must be granted as to Count I and Count II of Plaintiffs' Complaint. Additionally, since Plaintiffs have failed to allege sufficient facts to show they are entitled to additional payment under their policies, they have failed to support their claim for vexatious refusal to pay under their policies. See Lawrey v. Reliance Ins. Co., 26 S.W.3d 857, 863 (Mo. Ct. App. 2000). Therefore, Defendant's Motion for Summary Judgment must also be granted as to Count III of Plaintiffs' Complaint.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**, and Plaintiffs' claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (ECF No. 20) is **DENIED**.

Dated this 5th day of November, 2012.

                                                  /s/ Jean C. Hamilton
                                            UNITED STATES DISTRICT JUDGE